## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ANGELA DENISE GRANT, on behalf of herself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTERSTATE BANK,<br><br>Defendant. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Angela Denise Grant ("Plaintiff"), on behalf of herself and all persons similarly situated, complains and alleges the following based on personal knowledge as to allegations regarding herself and on information and belief as to others.

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant Centerstate Bank ("Centerstate" or "Defendant"), arising from Centerstate's routine practice of charging two or more fees ("Multiple Fees"), including overdraft fees ("OD Fees") and non-sufficient funds fees ("NSF Fees"), on a single item; and for charging fees for issuing electronic bank statements when Centerstate is only permitted by the agreements to charge fees for *paper* bank statements.

2. These practices breach contractual promises and violate the covenant of good faith and fair dealing.

3. Centerstate's customers have been injured by Centerstate's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with Centerstate.

4. Plaintiff's account with Centerstate is governed by the Terms and Conditions of Your Account and Disclosures attached as Exhibit A, and Centerstate Bank Valued Services Miscellaneous Fees ("Fee Schedule, attached as Exhibit B), and What You Need to Know About Overdrafts and Overdraft Fees ("Overdraft Disclosure", attached as Exhibit C) (collectively "Account Documents"), which permit Centerstate to impose certain fees and addresses the policies at issue in this Complaint.

5. Plaintiff does not dispute Centerstate's right to either: (a) reject an item and charge a single NSF Fee; or (b) pay a transaction and charge a single OD Fee on an item that actually overdraws the account. However, Plaintiff does dispute Centerstate unlawfully maximized its already profitable account fees by charging additional, unauthorized fees barred by the contract.

6. Specifically, Centerstate unlawfully assesses *multiple* fees on a single Automated Clearing House ("ACH") payment or check.

7. In Centerstate's sole and undisclosed view, each time Centerstate processes an ACH transaction or check for payment after having been rejected for insufficient funds, it becomes a new, unique item or transaction that is subject to another fee. But Centerstate's Account Documents never even hint that this counterintuitive result could be possible.

8. Centerstate's Account Documents indicate that only a single fee will be charged for overdrafts (including both NSF Fees and OD Fees), however many times the request for payment is reprocessed. An electronic item reprocessed after an initial return for insufficient funds cannot and does not fairly become a new, unique item for fee assessment purposes.

9. Centerstate breaches its contract when it charges more than one fee on the same item, since the contract states—and reasonable consumers understand—that the same item can only incur a single fee.

10. Centerstate also breaches its duty of good faith and fair dealing when it charges multiple fees on a single item. Specifically, Centerstate abuses its contractual discretion by: (a) processing transactions when it knows full well that a customer's account lacks sufficient funds; and (b) charging fees upon each reprocessing of the same item.

11. Likewise, Plaintiff does not contest that Centerstate can charge a fee for a paper statement, but Centerstate breaches its contract, and the attendant duty of good faith and fair dealing, by charging a fee for an *electronic* statement.

12. Plaintiff and other Centerstate customers have been injured by these practices. On behalf of herself and the Classes, Plaintiff seeks damages and restitution.

13. Centerstate's improper scheme to extract funds from accountholders already struggling to make ends meet has victimized Plaintiff and thousands of other accountholders.

## JURISDICTION

14. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed class that is comprised of over one hundred members, and because at least one of the members of the proposed class is a citizen of a different state than Centerstate.

## PARTIES

15. Plaintiff Angela Denise Grant has a personal checking account with Centerstate. Ms. Grant resides in Bushnell, Florida

16. Defendant Centerstate Bank is 75th largest bank in the United States and holds more than $17 billion in assets. Centerstate is headquartered in Davenport, Florida and has branches in Florida, Georgia, and Alabama.

## FACTUAL ALLEGATIONS

### I. CENTERSTATE CHARGES TWO OR MORE FEES ON THE SAME ITEM

#### A. Overview of Claim

17. As alleged more fully herein, Centerstate's operative account documents allow it to take certain steps when a Bank accountholder attempts a transaction but does not have sufficient funds to cover it. Specifically, Centerstate may: (a) authorize the item and charge a single OD Fee; or (b) reject the item and charge a single NSF Fee.

18. In contrast to its Account Documents, however, Centerstate regularly assesses two or more fees on the same item or transaction.

19. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee, even if a transaction is reprocessed for payment multiple times.

20. Centerstate never disclosed this practice. To the contrary, Centerstate indicated it will only charge a single fee on an item or per transaction.

#### B. Plaintiff's Experience

21. As an example, on June 3, 2019, Plaintiff attempted to make a one-time payment.

22. Centerstate rejected payment of that item due to insufficient funds and charged Plaintiff a $35 Fee.

23. Unbeknownst to Plaintiff and without its request to Centerstate to retry the transaction, two later, on June 6, 2019, Centerstate processed the same item again, and again rejected the transaction and again charged Plaintiff a $35 NSF Fee.

24. In sum, Centerstate charged Plaintiff $70 in fees to process a single payment.

25. Plaintiff understood the transaction to be a single transaction, an understanding consistent with what is laid out in Centerstate's Account Documents, capable at most of receiving a single NSF Fee (if Centerstate returned it) or OD Fee (if Centerstate paid it).

26. Centerstate itself also understood the transaction to be a single transaction.

C. **The Imposition of Multiple Fees on a Single Transaction Violates Centerstate's Express Promises and Representations**

27. The Account Documents provides the general terms of Plaintiff's relationship with Centerstate and makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

28. The Account Documents define "item" as follows:

> At our discretion we may pay and permit transactions for items, including checks, ACH debits, in-person withdrawals, recurring debit card transactions, and other electronic transactions, when you do not have sufficient funds available, although special arrangements or circumstances may change this amount.

Ex. C, Overdraft Disclosure.

29. The Account Documents contained explicit terms indicating that OD Fees and NSF Fees will only be assessed once per transaction or item, when in fact Centerstate regularly charges two or more fees per transaction or item even though a customer only requested the payment or transfer once.

30. Centerstate's Account Documents indicated that a singular fee can be assessed on checks, ACH debits, and electronic payments. The Fee Schedule clearly stated that only a singular fee can be assessed, either an NSF Fee or OD Fee, per item or transaction that is returned due to insufficient funds.

31. The same check, ACH debit, debit card transaction or ATM withdrawal on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit them.

32. The Fee Schedule reinforces this commonsense understanding:

Overdraft/NSF Charge (**per item**) . . . . . . . . . . . . . . . . . . . . . . . . . $35

Ex. B (emphasis added).

33. Based on the above, a customer would expect to be charged either an NSF Fee or an OD Fee, but certainly not both, and absolutely not multiple NSF Fees or OD Fees.

34. Similarly, the Overdraft Disclosure states:

Service Charges

You will be assessed up to a $35.00 overdraft fee **for each item** presented against insufficient funds that we pay or return unpaid.

[…]

If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF). **A fee is charged for any item** which creates an overdraft on your account whether the item is a check, in-person withdrawal, ATM withdrawal or other electronic means.
[…]

If an item is processed for payment and we create an overdraft, pursuant to the Depositor's Account Agreement, you agree to pay us the amount of any overdraft and applicable fees, as published, immediately, without notice or demand from us, **unless you otherwise specify that you wish all Non-Sufficient Funds (NSF) items returned, upon which you agree to pay us the amount of any applicable fee.**

Ex. C (emphasis added).

35. According to the version of the Terms and Conditions effective as of April 13, 2018, attached hereto as Ex. D:

> A $35.00 overdraft/NSF charge may be assessed on any withdrawal created by check, in-person withdrawal, ATM withdrawal, or other electronic means, that will overdraw the available account balance, regardless of whether we pay or dishonor (return) the item.

36. There is zero indication anywhere in the Account Documents that the same item is eligible to incur Multiple Fees.

37. Even if Centerstate reprocesses an instruction for payment, it is still the same item. Centerstate's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

38. The provisions referenced above never discuss a circumstance where Centerstate may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

39. In sum, Centerstate promises that one fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, Centerstate breached the contract when it charged more than one fee per item.

40. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which Centerstate will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Centerstate disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Centerstate customers ever agree to such fees.

41. Banks and credit unions like Centerstate that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Centerstate never did.

42. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Centerstate, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

43. First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

44. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

45. BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

46. Regions Bank likewise states:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf.

47. First Financial Bank states,

Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.

Special Handling/Electronic Banking Disclosures of Charges, First Financial Bank 2 (Aug. 2018),

https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_

Charges.pdf.

48. Andrews Federal Credit Union states,

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

https://www.andrewsfcu.org/AndrewsFCU/media/Documents/Terms-and-

Conditions_REBRANDED_Dec2019-Update.pdf.

49. Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and

resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.myconsumers.org/docs/default-source/default-document-

library/ccu_membership_booklet_complete.pdf?sfvrsn=6.

50. Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.wDupaco.coop/en-us/PDFDocuments/Important%20Account%20Information%20Disclosure%20-%20WDupaco.pdf.

51. Railroad & Industrial Federal Credit Union states,

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.rifcu.org/Documents/Disclosures/Account-Terms-Conditions.aspx.

52. Partners 1st Federal Credit Union states.

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf.

53. Members First Credit Union states,

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the

transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.]

http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf.

54. Community Bank, N.A. states,

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf.

55. RBC Bank states,

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf.

56. Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

https://www.diamondlakesfcu.org/termsconditions.html.

57. Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf?__cf_chl_captcha_tk__=add6ebea42df3385074decd4b16c1f86a8369dc9-

1580434763-0-AfXmB7FcyYTqzK9oMNbMSKM6k5fnKS5Xf-z7p3Tv-Pt951tDs7wM8yaaIV06w718t2nomyWR1Q8COwgpfgE07FJWZUeFkJN6lxbXDZG1SvidTWhYm9l85AbCd5afw2imyGdtdzKhXl9bQ9TYkjOlTVM4w8OFJOtE3wVIHrEITnQnSfoR5mZxM5O0bu4f_FHoHiJj0XsjNkVoGblk0-lti6-gMn-Wcu_o87SGQW6dOUF2i6rHGiM_CkdI-ULanKI2NS3KlhkYAuNatN9Jdwr7Plc6oJozMbZQeczuO7VlbRnuCFD0tjzkw1lsnof7uaRvLRAkfKYi3wh0tUU1c_Y6N4aH1qN8SPftOn8TYJHO7OoILvpMfamNTqv_djpbUl3GVA.

58. Centerstate provided no such disclosure at the time of the operative transactions, and in so doing, deceived its accountholders about its true practices.

D. **The Imposition of Multiple Fees on a Single Item Breaches Centerstate's Duty of Good Faith and Fair Dealing**

59. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations, which means that Centerstate is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Centerstate has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on even greater penalties on the depositor. Here—in the adhesion agreements Centerstate foisted on Plaintiff and its other customers— Centerstate has provided itself numerous discretionary powers affecting customers' credit union accounts. Instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Centerstate abuses that discretion to take money out of consumers' account without their permission and contrary to customers reasonable expectations that they will not be charged multiple fees for the same transaction.

60. Centerstate exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it reprocesses a transaction when it knows a customer's

account lacks funds and then charges additional fees on a single item. Further, Centerstate abuses the power it has over customers and their accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of Centerstate's implied covenant to engage in fair dealing and act in good faith.

61. Further, Centerstate maintains complete discretion not to assess fees on transactions at all. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one fee on a single item, Centerstate breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

62. It was bad faith and totally outside Plaintiff's reasonable expectations for Centerstate to use its discretion to assess two or three fees for a single attempted transaction.

63. When Centerstate charges multiple fees, Centerstate uses its discretion to define the meaning of a transaction in an unreasonable way that violates common sense and reasonable consumer expectations. Centerstate uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

## II. CENTERSTATE CHARGES UNAUTHORIZED ELECTRONIC STATEMENT FEES

64. The Account Documents permit Centerstate to charge a $2 fee for "traditional paper statements." Ex. B. While Plaintiff does not contest Centerstate's right to charge such a fee for sending a traditional paper statement, in breach of the Account Documents, Centerstate improperly charge a $2 fee for sending an electronic statement to Plaintiff—a fee nowhere listed on its Fee Schedule.

65. Plaintiff was charged a $2 fee for receiving an electronic statement, by example, on May 24, 2019, in violation of the Account Documents.

## **CLASS ALLEGATIONS**

66. Plaintiff brings this class action pursuant to F.R.C.P. 23 on behalf of herself and all members of the "Classes" defined as:

> All customers who, within the applicable statute of limitations period, were charged Multiple Fees for the same item in a Centerstate checking account (the "Multiple Fees Class").

> All customers who, within the applicable statute of limitations period, were charged a fee for receiving an electronic statement by Centerstate (the "Electronic Statement Class").

67. Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

68. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

69. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Centerstate has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

   a. Whether Centerstate violated contract provisions by charging Multiple Fees on the same item;

   b. Whether Centerstate breached its covenant of good faith and fair dealing with Plaintiff and other Multiple Fees Class members through its Multiple Fee policy and practice; and

  c.  Whether Centerstate violated contract provisions by charging electronic statement fees;

  d.  Whether Centerstate breached the covenant of good faith and fair dealing with Plaintiff and other Electronic Statement Class members by charging electronic statement fees; and

  e.  The proper method or methods by which to measure damages;

  70.  The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Centerstate's records. Centerstate has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

  71.  It is impracticable to bring members' of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

  72.  Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Centerstate, as described herein.

  73.  Plaintiff is more than an adequate representative of the Classes in that Plaintiff is an Centerstate checking account and have suffered damages as a result of Centerstate's contract violations. In addition:

      a.      Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

      b.      There is no conflict of interest between Plaintiff and the unnamed members of the Class;

      c.      Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

      d.      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

74. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

75. Centerstate has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

76. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSE OF ACTION
## BREACH OF CONTRACT INCLUDING THE
## COVENANT OF GOOD FAITH AND FAIR DEALING
## (Individually and on Behalf of the Classes)

77. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

78. Plaintiff, and all members of the proposed Classes contracted with Centerstate for checking account services, including debit card services.

79. Centerstate breached promises made to Plaintiff and all members of the proposed Multiple Fees Class when as described herein when it assessed multiple fees on the same item.

80. Centerstate breached promises made to Plaintiff and all members of the proposed Electronic Statement Class here when it charged fees for electronic statements.

81. In addition, under Florida law, which applies there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring he right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

82. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

83. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

84. Centerstate has breached the covenant of good faith and fair dealing and abused its discretion it granted to itself when it assessed multiple fees on the same item.

85. Centerstate has breached the covenant of good faith and fair dealing and abused its discretion it granted to itself when it charged fees for issuing electronic statements.

86. Plaintiff and all members of the proposed Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

87. Plaintiff and all members of the proposed Classes have sustained damages as a result of Centerstate's breach of the contract and breach of the duty of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

a. Certification for this matter to proceed as a class action on behalf of the Class;

b. Declaring Centerstate's multiple fee and electronic fee policies and practices to be in breach of its contract with accountholders;

c. Restitution of all Multiple Fees and electronic statement fees paid to Centerstate by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

d. Actual damages in an amount according to proof;

e. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

f. For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

g. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demands a trial by jury on all claims so triable.

Dated:  August 18, 2020                                 Respectfully submitted,

*s/ Jeff Ostrow*
Jeff Ostrow FBN 121452
Jonathan M. Streisfeld FBN 117447
Daniel Tropin FBN 100424

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone No. (954) 525-4100
Facsimile No. (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
tropin@kolawyers.com


Jeffrey D. Kaliel (*pro hac vice* to be filed)
Sophia Gold (*pro hac vice* to be filed)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

*Attorneys for Plaintiff and the Putative Class*